**HESS OIL VIRGIN ISLANDS CORP., VIRGIN ISLANDS INDUSTRIAL MAINTENANCE CORP. and LESLIE WALLACE,** Appellants

**v.**

**ERICA RICHARDSON, individually and on behalf of the minors, ILSA TANGHOW, GREGORY ROBINSON and KEITH CONTEH,** Appellees

**UNITED DOMINION CONSTRUCTORS, INC., WILLIAM OSNER and HESS OIL VIRGIN ISLANDS CORP.,** Appellants

**v.**

**HUGH DAVID COFFEY,** Appellee

District Court Civ. Nos. 1993-261, 1993-239

Territorial Court Nos. 985-1991, 847-1992

District Court of the Virgin Islands,

Div. of St. Croix

June 20,1995

GEORGE H. LOGAN, ESQ., St. Croix, V.I., *for Appellant Industrial Maintenance Corp*

BRITAIN H. BRYANT, ESQ., St. Croix, V.I., *for Named Appellant Hess Oil Virgin Islands Corp*

R. ERIC MOORE, ESQ., St. Croix, V.I., *for Named Appellant Leslie Wallace*

LEE J. ROHN, ESQ., St. Croix, V.I., *Lead Attorney for Appellee Erica Richardson, Individually and on behalf of the minors Ilsa Tanghow, Gregory Robinson, and Keith Conteh*

GEORGE W. CANNON, JR., ESQ., St. Croix, V.I., *Co-Counsel for Appellee Erica Richardson, Individually and on behalf of the minors Ilsa Tanghow, Gregory Robinson, and Keith Conteh*

337

ANDREW C. SIMPSON, ESQ., St. Croix, V.I., *for Appellants United Dominion Constructors, Inc., United Dominion Constructors, Inc., Hess Oil Virgin Islands Corp.*

LISA HARRIS-MOOREHEAD, ESQ., St. Croix, V.I., *for Appellee Hugh David Coffey*

BEFORE: MOORE, *Chief Judge*, District Court of the Virgin Islands; THOMPSON, *Chief Judge United States District Court for the District of New Jersey*, Sitting by Designation; and GILES, *District Court Judge for the Eastern District of Pennsylvania*, Sitting by Designation.[1]

## OPINION: OPINION OF THE COURT

These separate appeals involve provisions of the Virgin Islands labor relations statute, V.I. CODE ANN. tit. 24, §§ 61-79 (1993), and in particular, sections 76-79 governing wrongful discharge (Wrongful Discharge Act" or "WDA"). Both appellees, discharged employees, filed complaints with the Virgin Islands Department of Labor ("Department" or "DOL") charging wrongful discharge, subsequently filed WDA actions in the Territorial court, and thereafter requested permission from the Department to withdraw their complaints. In *United Dominion Constructors, Inc. v. Coffey*, Civ. No. 239-1993, United Dominion Constructors, Inc. ("UDCI") appeals from the Territorial Court's denial of its motion to dismiss the WDA action for the failure of its former employee, Hugh David Coffey ("Coffey"), to exhaust his administrative remedies. In *Hess Oil Virgin Islands Corp. v. Richardson*, Virgin Islands Maintenance Corporation ("IMC") appeals the denial of its motion to dismiss the WDA suit of its former employee, Erica Richardson ("Richardson").

■ Two Territorial Court judges certified that the following question of law controlled each appeal:

Whether an employee who first elects to file an administrative claim for wrongful discharge pursuant to the Virgin Islands

---

[1] Because all Territorial Court judges have rendered opinions on the issue involved in the case, they were recused from sitting on this panel.

338

Wrongful Discharge Act, 24 V.I.C. § 76 et seq. (1986), but withdraws the claim before it is administratively resolved, is jurisdictionally barred from subsequently pursuing a judicial action. Having carefully considered our jurisdiction[2] and the merits of these appeals, we hold that the Wrongful Discharge Act does not require exhaustion of administrative remedies or election between administrative and judicial remedies. Accordingly, an employee who has initiated an administrative claim for wrongful discharge is not barred from filing simultaneously or subsequently a WDA action in court.

## I. FACTS AND PROCEDURAL HISTORY.

Because the factual and procedural contexts underlying each appeal differ, they are discussed separately.

### A. The Coffey case.

Mr. Coffey was employed as a subcontractor/administrator by UDCI from October 14, 1991 until he was discharged on May 14, 1992, on the ground that he had violated company policy. On June 12, 1992, Coffey, proceeding *pro se*, filed an administrative claim with the DOL for reinstatement and back pay. On August 12, 1992, he filed the instant lawsuit for wrongful termination, distress. Pursuant to its internal regulations, the Department held a preliminary hearing on October 16, 1992.[3] No other action had been taken on his administrative claim by April of 1993 when Coffey wrote the DOL to request that his administrative claim be dismissed, pursuant to the DOL regulation that "[a]ny complaint may be withdrawn at any time with the consent of the Commissioner."[4] The Department informed Coffey that his request must be made on an official DOL dismissal form, which it sent to him. Before Coffey could complete and return the official form, however, UDCI filed

---

[2] This Court has authority to hear interlocutory appeals on controlling questions of law. *Government v. deJongh*, 28 V.I. 153, 158-159 (D.V.I. App. 1993); *Archer v. Aero Virgin Islands Corps*, Civ. No. 92-18 (D.V.I. App. Sept. 28, 1992). On November 18, 1993, the Court agreed to hear these interlocutory appeals and consolidated them for purposes of briefing.

[3] V.I.R. & REGS. tit. 24, § 77-25 (1991).

[4] V.I.R. & REGS. tit. 24, § 77-21(A).

its motion to dismiss his court action because Coffey had failed to exhaust his administrative remedies, relying on the Territorial Court decision in *Daniel v. St. Thomas Dairies, Inc.,* 27 V.I. 120 (Terr. Ct. 1992).

By memorandum opinion dated August 24, 1993, the Territorial Court (Eltman, J.) denied UDCI's motion to dismiss, finding that Coffey's motion to withdraw his administrative claim distinguished his case from *Daniel.* Even though the administrative claim was still pending, the trial judge ruled this distinction to be critical since he read *Daniel* as requiring the "exhaustion" of the administrative process. Noting that the statutory remedies available under the WDA are not inconsistent, the judge disagreed with *Daniel's* reliance on the doctrine of election of remedies, which presupposes two available and inconsistent remedies. The court also observed that the short 30-day period for filing an administrative claim makes the election of administrative remedies particularly harsh under the WDA. The court suggested a case-by-case application of the exhaustion doctrine, finding that the exhaustion requirement was not warranted in a case like Coffey's where the administrative remedies — reinstatement and back pay — "would be inadequate in comparison to what he seeks."

*B. The Richardson Matter.*

Ms. Richardson was discharged by her employer, IMC, a subcontractor of Hess Oil Virgin Islands Corp. ("HOVIC"), where she had worked as a secretary at the HOVIC facility for two years before she was discharged in September of 1991. On October 1, 1991, Richardson filed an administrative complaint with the DOL and a year later filed her lawsuit in Territorial Court based on the same alleged wrongful termination. On March 23, 1993, the DOL approved her November 12, 1992, request to dismiss her administrative complaint. In the meantime, on March 3, 1993, IMC moved to dismiss the civil action, arguing that Richardson was required to exhaust her administrative remedies before seeking redress in the court, relying on *Daniel.*[5] On June 25, 1993, the Territorial Court

---

[5] IMC also relied on a St. Thomas Territorial Court decision, *Knight v. Kinney Shoe Corporation,* St. T. Civ. No. 1174/1991 (Terr. Ct. June 3, 1993).

(Cabret, J.) denied IMC's motion to dismiss, finding jurisdiction over the action because the administrative claim was no longer pending, which distinguished Richardson's case from *Daniel*.

## II. STANDARD OF REVIEW.

Because the question raised in this consolidated appeal involves the application of legal precepts and turns on statutory construction, our review is plenary. *Nibbs v. Roberts*, V.I. BBS 91CI29A.DX2 (D.V.I. App. Feb. 18, 1995); *In re Barrett*, V.I. BBS 91CI159A.DX2 (D.V.I. App. Jan. 31, 1995)

## III. JURISDICTION OF THE APPELLATE DIVISION

Although this issue has been litigated in the two divisions of the Territorial Court and the trial division of this Court, with varying and somewhat conflicting results, it is a case of first impression in this Appellate Division. Since a panel of the United States Court of Appeals for the Third Circuit has recently considered the scope of the Wrongful Discharge Act, although in a different factual context, and come to a similar conclusion,[6] a word is in order on the role of this Appellate Division within the territorial/federal framework of the Revised Organic Act of 1954,[7] which the Congress of the United States has enacted as the "constitution" of these Virgin Islands. In other words, are we a territorial appellate tribunal akin to a state appellate court, whose interpretations of substantive local law are to be treated with deference unless manifestly in error? Or are we another layer of federal review between the local trial court and the United States court of appeals, that is, an intermediate federal court whose rulings of substantive local law are reviewed *de novo*?

In 1984, Congress amended the Revised Organic Act to extend the principles of federalism to the Territory's judicial system by enabling the Virgin Islands Legislature to create its own appellate court, establishing in the meantime an appellate panel

---

[6] *Nickeo v. VITELCO*, 42 F.3d 804, 1994 U.S. App. LEXIS 34992 (3d Cir. 1994) (In a factually distinct case where the discharged employee had gone directly to court, the court of appeals ruled exhaustion of administrative remedies was not required.)

[7] The Revised Organic Act of 1954, 48 U.S.C. §§ 1541-1645 (1995), *reprinted in* V.I. Code Ann., Historical Documents, 73-177 (codified as amended) (1995) ("Revised Organic Act").

within the District Court (the Appellate Division) to exercise appellate power over matters of local law.[8] The Legislature of the Virgin Islands has established the boundaries of our appellate jurisdiction over decisions of the Territorial Court in 4 V.I.C. § 33.

We have found only one decision of the Third Circuit Court of Appeals addressing the significance of the 1984 amendments on the role of the Appellate Division:

> The overall congressional intention discernible in [the 1984 amendments] is encouragement of the development of a local Virgin Islands appellate structure with greater autonomy with respect to issues of Virgin Islands law .... The Appellate Division ... represents a step in that direction, rather than toward the creation of a territorial federal appellate court with a place and role analogous to the place and role of the courts of appeals in the Article III court structure.

*Matter of Alison*, 837 F.2d 619, 622 (3d Cir. 1988). In the absence of a locally established Virgin Islands "supreme court," we understand *Alison* to hold that the Appellate Division should have a more autonomous role in interpreting local law.[9]

■■ Having thus established that we presently function as the local appellate court for the Territory, we find the standard for reviewing our decisions on substantive local law suggested by the requirement added in 1984 to the Organic Act that relations between the federal courts and the courts exercising jurisdiction under Virgin Islands law "be governed by the laws of the United States pertaining to the relations between the courts of the United States ... and the courts of the several States" in all matters and proceedings.[10] This would seem to import a deference comparable to that which federal courts sitting in diversity must give to state

---

[8] Revised Organic Act at § 23A, 48 U.S.C. § 1613a.

[9] An earlier decision of the Court of Appeals which appears to the contrary is in fact inapposite because it (1) was on direct appeal from the district court sitting as a trial court, not an appeal from the Territorial Court, and (2) preceded the 1984 amendments to thhhe Organic Act which set up the present separate, insular judicial system for the Territory, although the panel did acknowledge the deference required by the Supreme Court. *See Saludes v. Ramos*, 744 F.2d 992, 993-94 (3d Cir. 1984).

[10] Revised Organic Act at § 23, 48 U.S.C. § 1613.

courts. This statutory hint is in accord with (and possibly based upon) Supreme Court precedent requiring federal courts to defer on matters of local law to decisions of insular courts of appeals, such as ours. The Court answered whether the "territorial courts should declare the law of the territories with the least possible interference" as follows:

> It is true that under the appeal statute the [court of appeals] had complete power to reverse any ruling of the territorial court on law or fact; but we are of the opinion that the power should be exercised only in cases of manifest error.... In so far as the decisions of the [Territory] are in conformity with the Constitution and applicable statutes of the United States and are not manifestly erroneous in their statement or application of governing principles, they are to be accepted as stating the law of the Territory. Unless there is clear departure from ordinary legal principles, the preference of a federal court as to the correct rule of general or local law should not be imposed upon [the Territory].

*Waialua Agricultural Co. v. Christian*, 305 U.S. 91, 109 (1938) (citations omitted); *accord De Castro v. Board of Commissioners*, 322 U.S. 451, 458-59 (1949). Specifically, the deference to be given rulings of insular appellate courts on matters of substantive local law "is comparable to that [applied] when, upon appeals from federal district courts sitting in the states, the federal appellate courts are required to follow state law under the rule of *Erie R. Co. v. Tompkins*." *De Castro*, 322 U.S. at 459 (citations omitted). It would thus be altogether appropriate if such deference to the Appellate Division results in the establishment of substantive Virgin Islands territorial law different from the body of federal law developed through appeals to the court of appeals from the federal district court of the Virgin Islands.

## IV. DISCUSSION.

The issue before the Court falls under the general rubric of exhaustion of administrative remedies, *i.e.*, whether a discharged employee may bring a civil action under the Wrongful Discharge Act while an administrative claim stemming from the same facts is

343

still pending before the Department. The issue presents a straightforward question of statutory construction. We first determine whether the WDA explicitly requires the exhaustion of administrative remedies, and, since we conclude that it does not, we then examine the statute as a whole to determine whether it would be in accord with the intention of the Legislature for the Court to require exhaustion in the exercise of its sound discretion.

The starting point for interpreting a statute is always the language of the statute itself.[11] Courts presume that the legislature expresses its legislative intent through the ordinary meaning of the words it chooses to use, and if the statutory language is clear, it is not necessary to look for congressional intent from legislative history. The plain meaning of the words ordinarily is regarded as conclusive,[12] and it is relevant when interpreting terms in an act passed to curb specific evils to apply the principle that "[w]ords take on meaning in the company of other words."[13] Here, the language of the statute is clear and without ambiguity; accordingly there is no need to review the sparse legislative history.

 Section 76(c) of the Wrongful Discharge Act establishes a presumption that an employee is "wrongfully discharged" if the discharge is for a reason other than one of the nine (9) enumerated in section 76(a) as grounds for discharge.[14] The pertinent part of section 76(c) states: "Any employee discharged for reasons other

---

[11] *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 85 L. Ed. 2d 692, 105 S. Ct. 2297 (1985); *American Tobacco Co. v. Patterson*, 456 U.S. 63, 69, 71 L. Ed. 2d 748, 102 S. Ct. 1534 (1982).

[12] *United States v. Turkette*, 452 U.S. 576, 580, 69 L. Ed. 2d 246, 101 S. Ct. 2524 (1981).

[13] *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1317 (3d Cir. 1994).

[14] Section 76 of Title 24 states:

 (a) Unless modified by contract, an employer may dismiss any employee:

 (1) who engages in a business which conflicts with his duties to his employer or renders him a rival of his employer;

 (2) whose insolent or offensive conduct toward a customer of the employer injures the employer's business;

 (3) whose use of intoxicants or controlled substances interferes with the proper discharge of his duties;

 (4) who wilfully and intentionally disobeys reasonable and lawful rules, orders, and instructions of the employer; provided, however, the employer shall not bar an employee from patronizing the employer's business after the employee's working hours are completed;

 (5) who performs his work assignments in a negligent manner;

than those stated in subsection (a) of this section shall be considered to have been wrongfully discharged.... ." 24 V.I.C. § 76 (emphasis added). The interpretation of appellants that an employee claiming wrongful discharge must first file a complaint with the DOL, who then determines whether the discharge was wrongful, goes beyond the plain language of the statute and seeks to add an additional requirement to section 76(c) which was not imposed by the Legislature. The WDA does not state a preference for either the administrative agency or the court to be the forum for declaring the discharged employee to have been wrongfully discharged. The statute merely sets up the presumption that the employee has been wrongfully discharged if it is not for one of the enumerated reasons, and gives the employee the right to seek a determination on the wrongfulness of the discharge through either or both the administrative and judicial processes.

There is no language in the WDA which requires the employee first to file a claim with the DOL and then exhaust that avenue before bringing an action in court. Nor are there any words which would require the employee to select and follow to completion one of the avenues to the exclusion of the other path. Section 77[15] of the

_____

(6) whose continuous absences from his place of employment affect the interests of his employer;

(7) who is incompetent or inefficient, thereby impairing his usefulness to his employer;

(8) who is dishonest; or

(9) whose conduct is such that it leads to the refusal, reluctance, or inability of other employees to work with him. 24 V.I.C. § 76(a).

[15] Section 77 states:

(a) Any employee discharged for any reasons other than those contained in section 76 of this chapter may, within thirty (30) days after discharge, file a written complaint with the Commissioner.

(b) The Commissioner shall cause to be serve upon the employer a copy of the complaint stating the charges and a written notice of hearing before the Commissioner which shall be held ten (10) days after service of the complaint. The Commissioner shall also provide such written notice to the employee filing the complain. The employer named in the complaint may file an answer to the complaint and such employer and the employee filing the complaint may appear in person or otherwise and give testimony at the time and place at the hearing as fixed in the complaint. In any such proceedings, rules of evidence prescribed by the Commissioner shall be controlling. (c) If upon all testimony taken the commissioner finds that the employer named in the complaint has wrongfully discharged an employee, the Commissioner shall state his findings and shall serve on the employer an order requiring that the employee be reinstated with back pay. If upon all the testimony taken the Commissioner finds that the employee has

WDA provides for an administrative remedy through the filing of a complaint with the Commissioner of Labor, who can order reinstatement with back pay upon a finding that the employee was wrongfully discharged. Section 78 gives the Commissioner the right to seek judicial enforcement of his order.[16] Section 79, on the other hand, authorizes the employee to seek judicial determination of a wrongful discharge, providing that *"[i]n addition* to the remedies provided by sections 77 and 78, any wrongfully discharged employee *may* bring an action for compensatory and punitive damages in any court of competent jurisdiction against any employer who has violated the provisions of section 76 of this chapter." (emphasis added).

■■ Nor can we infer from the words used in sections 77 and 79 a justification for the exercise by this Court of discretion to require exhaustion of a discharged employee's administrative claim. Quite to the contrary, both sections 77 and 79 of the WDA use the permissive "may," and section 79 uses the words "in addition." If the Legislature had intended to require exhaustion of the administrative decision-making process as a prerequisite to adjudication in the courts, it would have used the word "shall" in the first sentence of section 77(a). Further, a reading of the plain words of section 79 leads to the conclusion that the Legislature intended that the judicial remedies listed in the statute be concurrent to those available through the administrative process. A crabbed reading would indeed be required to find that when the Legislature wrote "[i]n addition to" it really meant "after exhausting." The fact that the Legislature did not explicitly require exhaustion and purposely used permissive language in both

---

not been wrongfully discharged, then the Commission shall state his findings of fact and shall issue an order dismissing the complaint. 24 V.I.C. § 77 (emphasis added).

[16]Section 78 states that

the Commissioner may request the Territorial Court of the Virgin Islands to enforce any order issued under section 77 of this chapter. The findings of the Commissioner with respect to questions of fact shall be considered conclusive if supported by substantial evidence on the record considered as a whole. The court may enforce any order of the Commissioner it deems just and proper and enter a decree enforcing, modifying and enforcing as so modified, or setting aside, in whole or in part, the order of the Commissioner. 24 V.I.C. § 78.

sections shows that the Legislature intended that both remedies be fully and simultaneously available to a complainant.

We also find instructive that the Legislature has drafted other statutes dealing with labor matters which expressly require exhaustion of administrative remedies. For example, the employment discrimination statute, 24 V.I.C. §§ 451-62, enacted before the WDA, specifically limits judicial review to those parties "aggrieved by a final order of the [agency]" and limits the issues to be considered on review to those issues considered by the agency, except in extraordinary circumstances. 24 V.I.C. § 457. Another labor provision, 24 V.I.C. § 70, provides that "[a]ny person aggrieved by a final order of the Commissioner... may obtain a review of such order [by petition to] the Territorial Court". Congruently, section 78 of the Wrongful Discharge Act gives the DOL the right to "request the Territorial Court of the Virgin Islands to enforce any [administrative] order issued under section 77."[17] All three of these provisions specifically provide for judicial action following an administrative proceeding and all three explicitly require a final decision of the Commissioner before judicial review may be sought. The Virgin Islands Legislature knows how to express an intention to require the exhaustion of administrative remedies before a lawsuit may be brought in court. Here, it chose not to use such obligatory language.[18]

 Today we explicitly overrule the decision in *Daniel v. St. Thomas Dairies, Inc., supra,* and its progeny in the Territorial Court, to the extent that they conflict with our decision in this case.

---

[17] *See supra* notes 16-17 (quoting §§ 77 & 78).

[18] A review of the relief available under the two remedial schemes contained in the Wrongful Discharge Act supports the view that both judicial and administrative remedies should be concurrently available under any rational construction. An administrative claimant may seek back pay and reinstatement from the Department. 24 V.I.C. § 77. A judicial suitor may claim compensatory and punitive damages, as well as attorneys fees and costs. 24 V.I.C. § 79. These separate remedial paths do not conflict and a claimant might want to pursue both types of remedies. On the other hand, some litigants may only want money damages, in which case a requirement to first exhaust administrative remedies would be pointless and wasteful since that relief would not be available from the Commissioner.

## V. CONCLUSION

For the reasons expressed herein, we affirm the rulings of the Territorial Court in denying the appellants' motions to dismiss in these consolidated appeals. An appropriate order follows.

## ORDER OF THE COURT

AND NOW, this 20th day of June, 1995, after careful review of the record and having considered the submissions and arguments of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date;

IT IS ORDERED:

THAT the Territorial Court's Orders dated June 25, 1993 and August 24, 1993 are AFFIRMED.